UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 6:19-CV-00023 |
| ) | |
| WASHINGTON AND LEE UNIVERSITY ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Washington & Lee University ("W&L" and the "University"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, sets forth the following in support of its Motion to Dismiss. For the reasons that follow, the Court should dismiss Counts III and IV of Plaintiff John Doe's ("Doe") Complaint with prejudice for failure to state a claim upon which relief can be granted.

**I.     INTRODUCTION**

This lawsuit arises from W&L's suspension of Plaintiff because Plaintiff violated the University's Sexual Discrimination and Misconduct Policy. Plaintiff's Complaint alleges, at its core, that this suspension violates Title IX of the Education Amendments Act of 1972 ("Title IX"). On the periphery of this Complaint, Plaintiff alleges that this same suspension violated an implied contract that he entered into with W&L and also constituted the breach of a duty W&L owed to him. These ancillary claims are baseless under Virginia law and should therefore be dismissed.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff's "'factual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudging [his] claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "While the Court must accept the facts alleged in Plaintiff's Complaint as true, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Ultimately, Plaintiff must "allege facts sufficient to state all the elements of [his] claim." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotations omitted). "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotations omitted). In other words, a complaint "must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (*quoting Iqbal*, 556 U.S. at 678).

## III. PLAINTIFF'S ALLEGATIONS

W&L denies many of the allegations in Plaintiff's Complaint, but nonetheless bases its motion to dismiss entirely on the allegations Plaintiff sets forth in his Complaint.

2

### A.     W&L and its Sexual Discrimination and Misconduct Policy

W&L is a private liberal arts college located in Lexington, Virginia. (Compl. ¶ 41). Doe was a student at W&L from Fall 2015 through Spring 2017 and paid full tuition during this time period. (Compl. ¶ 40, 130).

W&L adopted a new Sexual Discrimination and Misconduct Policy (the "Policy") applicable to students in August 2016. (Compl. ¶ 96). This Policy remained in effect during the key events involved in this case. (Id.). The Policy establishes a Harassment and Sexual Misconduct Board (HSMB) to administer the Policy and Hearing Panels to adjudicate allegations of violations of the Policy. (Id.). The Policy guarantees complainants and respondents that they can expect a "prompt and equitable resolution of allegations of sexual misconduct" and an opportunity "to articulate concerns or issues about proceedings under the policy." (Id.). The Policy also guarantees the parties "the opportunity to offer information, present evidence, and identify witnesses during an investigation," and "equal access to information that will be used during the resolution proceedings." (Compl. ¶ 97). Under this Policy, if a Hearing Panel concludes that a student has violated the Policy, it can impose a sanction, including suspension. (Compl. ¶ 116).

### B.     The Alleged Incident and Investigation

On the night of March 11, 2017, Doe and a female W&L student, referred to in the Complaint as Jane Roe, had a sexual encounter at Doe's fraternity house. (Compl. ¶ 133-147). The next day, Roe reported this incident to W&L's Title IX Coordinator, Lauren Kozak. (Compl. ¶ 150). Kozak and Associate Dean Jason Rodocker investigated this allegation as a potential violation of the Policy. (Compl. ¶ 151). Kozak and Rodocker interviewed Doe, Roe, and other witnesses. (Compl. ¶ 153). Kozak and Rodocker prepared a report based on this investigation and presented it to the HSMB. (Compl. ¶ 153, 169).

3

### C. The Hearing

The HSMB appointed three administrators to serve on a Hearing Panel to adjudicate Roe's complaint. (Compl. ¶ 173). This three-member panel received the investigators' report. (Compl. ¶ 169). Doe was provided an opportunity to review the investigator's report, as well, and did review the report prior to the hearing. (Compl. ¶ 153, 169).

This Hearing Panel conducted a hearing on April 25, 2017. (Compl. ¶ 174). Both Doe and Roe attended the hearing, along with their respective advisors. (Compl. ¶ 174). Both Doe and Roe testified before the Hearing Panel. (Compl. ¶ 175). At the conclusion of the hearing, the Panel voted unanimously to find Doe responsible for nonconsensual sexual penetration. (Compl. ¶ 176). As a sanction for this offense, the Hearing Panel allowed Doe to complete the Spring 2017 semester, but suspended him for the Fall 2017 semester. (Compl. ¶ 199). This sanction did not guarantee Doe's reinstatement after this suspension, but rather allowed him to apply for reinstatement after the suspension was served, and set forth some prerequisites for his reinstatement. (Id.).

### D. The Appeal and Suspension

Pursuant to the Policy, Doe appealed the Hearing Panel's finding of responsibility and its sanction. (Compl. ¶ 202). Roe also appealed the sanction. (Id.). The HSMB appointed a new, three-member panel to hear these appeals. (Id.). The Appeal Panel affirmed the Hearing Panel's findings and sanction in May 2017. (Compl. ¶ 203). Consequently, Doe's suspension went into effect on May 21, 2017. (Compl. ¶ 200). After serving his suspension, Doe applied for reinstatement in November 2017 and July 2018. (Compl. ¶ 209, 220). W&L denied Doe reinstatement at both of these times because the University concluded that Doe did not satisfy the University's criteria for reinstatement. (Compl. ¶ 215, 230).

### E. Plaintiff's Breach of Contract and Negligence Claims

Plaintiff filed this lawsuit on April 23, 2019. In addition to his Title IX claims, Plaintiff alleges that W&L breached an implied agreement between him and the University and breached a duty of care the University owed him. (Compl. ¶ 273, 290). More specifically, in Count III, Plaintiff alleges that he "paid the University sums of money for his education, and in return, the University was to provide [him] with access to its undergraduate degree program." (Compl. ¶ 273). Plaintiff further alleges that W&L had a contractual obligation "not to suspend [him] for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith," and that the University breached this implied contract when it suspended him after a flawed investigative and adjudicative process." (Compl. ¶ 276-77). Additionally, in Count IV, Plaintiff alleges that W&L acted negligently when it suspended him as a result of a "biased and prejudicial disciplinary process." (Compl. ¶ 290).

### IV. ARGUMENT

The Court should dismiss Count III (Breach of Contract) and Count IV (Negligence) because both claims fail as a matter of law.

### A. Count III fails as a Matter of Law Because Plaintiff Has Not Alleged the Existence of an Enforceable Contract

The heart of Plaintiff's Complaint is his Title IX discrimination claim. However, he has attempted to buttress this claim with a corresponding breach of contract claim based on essentially the same facts. Many Title IX plaintiffs before him have attempted the same, typically alleging that a university's student policies establish contracts between the universities and their students. *See, e.g., Jackson v. Liberty Univ.*, 2017 WL 3326972, at *7 (W.D. Va. Aug. 3, 2017) (Moon, J.); *Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at *11 (W.D. Va. Aug. 5, 2015) (Moon, J.). Just as often, courts reject these claims, finding that these policies do not

5

establish contractual relationships between universities and students. *See e.g., id.; Brown v. Rectors & Visitors of Univ. of Virginia*, 361 F. App'x 531, 534 (4th Cir. 2010)*; Davis v. George Mason Univ.,* 395 F.Supp.2d 331, 337 (E.D. Va. 2005). For example, in 2015, this Court dismissed a Title IX plaintiff's breach of contract claim when it held that a predecessor version of W&L's Policy did not establish a contract between him and W&L. *See Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at *11 ("the Interim Sexual Harassment and Misconduct Policy… does not create a contract between W&L and Plaintiff.").

Perhaps recognizing this roadblock to prevailing on a breach of contract claim against W&L, Plaintiff has concocted a novel contract theory that does not rely on the Policy: Plaintiff alleges that his payment of tuition established an implied contract between him and W&L. This theory fares no better, however, because Virginia does not recognize an implied contract between students and their universities based solely on the payment of tuition. *See Butler v. Rector & Bd. of Visitors of Coll. of William & Mary,* 121 F. App'x 515, 521 (4th Cir. 2005) (finding plaintiff's implied contract theory "legally and factually baseless"); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018) (dismissing an implied contract claim and observing that the Supreme Court of Virginia has never held that "an implied contract is created between a student and his or her university merely through the payment of tuition.").

However, even if Plaintiff could establish the existence of an implied contract between him and W&L, he has not alleged facts showing a breach of this contract. Judge Ellis of the Eastern District of Virginia reached this same conclusion last year in a similar case. In *Marymount Univ*., the plaintiff alleged that the university breached an implied contract when it suspended him for violating the university's sexual misconduct policy. Marymount University based this decision on an investigative report issued by two faculty members and impact

6

statements written by the complainant and respondent. 297 F. Supp. 3d at 579–80. The court held that, even if Virginia law recognized an implied contract theory between students and universities based on the payment of tuition, such a contract would only guarantee students that they would not be suspended "for an arbitrary and capricious reason or no reason at all." *Id.* at 588. Because Marymount University afforded the student in that case an adjudication prior to his suspension, the court reasoned, his suspension was not arbitrary or capricious. *Id.* The court held:

> Nothing in the act of paying tuition implies that a student is entitled to any specific procedural protections. Instead, to the extent any contract can be implied between a student and his or her university, the student is only protected from irrational, haphazard treatment by the university. Doe may disagree with Marymount's decision and he may believe he was treated unfairly, but he cannot imply a host of contractual terms to which the parties never assented. Instead, Doe will have to rely on the statutory remedy provided by Title IX.

*Id.* at 589.

Plaintiff's breach of contract claim in this case must be dismissed because he, like the plaintiff in *Marymount Univ.*, admits that he was not suspended for a haphazard or irrational reason. To the contrary, Plaintiff acknowledges that he was suspended only after a thorough investigatory and adjudicative process. More specifically, he admits that: he participated in an investigation of Roe's claim performed by two W&L administrators; he was given an opportunity to review the investigators' report prior to his hearing; he provided testimony during a hearing of Roe's allegations before three W&L administrators; this three-member panel considered his and Roe's testimony and concluded that he was responsible and should be suspended; and, finally, he was given an opportunity to appeal this decision before a new, three member panel, which upheld his suspension. Plaintiff admits, therefore, that W&L did not suspend him "arbitrarily or capriciously." Consequently, even if the Court held that his payment

7

of tuition established an implied contract between him and W&L, he has not alleged facts showing a breach of this contract.

>    **B.    Plaintiff's Negligence Claim Fails as a Matter of Law or, Alternatively, this Claim is Barred by the Economic Loss Rule**

In Count IV, Plaintiff asserts a claim for negligence against W&L. Specifically, Plaintiff alleges that W&L "had a duty to [Plaintiff] to conduct the disciplinary process with due care," a duty which the University breached when it subjected Plaintiff "to a biased and prejudicial disciplinary process…." (Compl. ¶ 289). This claims fails because the law imposes no such duty of care on W&L. In the alternative, to the extent Plaintiff's negligence claim sounds in contract, these claims must be dismissed under the economic loss rule.

>    **1.    Plaintiff's Negligence Claim Fails Because Virginia Does Not Recognize the Duty Alleged by Plaintiff**

"There can be no actionable negligence unless there is a legal duty, a violation of the duty, and consequent damage." *Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988). Therefore, "a negligence claim must fail if based on circumstances under which the law imposes no duty of care on the defendant." *Doe v. Va. Wesleyan Coll.*, 90 Va. Cir. 345, 351 (Norfolk 2015) (citing *Burns v. Gagnon*, 727 S.E.2d 634, 641 (Va. 2012)). The "threshold question" in any negligence case, accordingly, "is whether a duty of care existed on the part of [the] defendants to [the] plaintiff[]." 372 S.E.2d at 375. "Whether such duty exists is a pure question of law." *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 641 (W.D. Va. 2016) (quoting *Yuzefovsky v. St. John's Woods Apts.*, 540 S.E.2d 134, 139 (Va. 2001)).

In this case, Plaintiff's negligence claim must be dismissed because, despite Plaintiff's allegations, Virginia does not impose a duty on universities to conduct its disciplinary program with due care. In *Marymount Univ.*, discussed at length above, a Title IX plaintiff similarly alleged a "special relationship" between a university and its students, which obligated the

8

university "to exercise special care throughout [plaintiff's] disciplinary proceedings." 297 F. Supp. 3d at 589. The court rejected this theory, observing that "there appears to be no Virginia law establishing the duty [plaintiff] claims [the university] breached." *Id.,* at 590.

This Court, as well, has dismissed negligence claims based on non-cognizable duties alleged to exist between universities and their students. *See Liberty Univ.,* 2017 WL 3326972, at *7-9 (dismissing negligence claim alleging student policies established duty of care); *Chitty v. Liberty Univ.*, 2013 WL 3877664, at *1 n.2 (W.D. Va. July 25, 2013) (dismissing negligence claim alleging that American Bar Association rules established duty of care for university to follow) (Moon, J.).

Similarly, in *Doe v. Virginia Wesleyan College*, a Virginia circuit court held "as a matter of law that the college/student relationship does not constitute a special relationship that would impose a duty on [a college] to warn or protect [a student]." 90 Va. Cir. at 359. *See also Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 609 (W.D. Va. 2002) (opining that "it is unlikely that Virginia would conclude that a special relationship exists as a matter of law between colleges and universities and their students"); *Burns*, 727 S.E.2d at 642-43 (declining to recognize a special relationship that would impose a duty of care between a high school principal and a student).

As these cases demonstrate, Virginia law does not recognize a duty of care that a university must exercise toward its students while administering its disciplinary program. Therefore, the Court should dismiss Plaintiff's negligence claim.

9

### 2. Plaintiff's Negligence Claim Fails Because It is Barred by the Economic Loss Rule

In the alternative, if the Court identifies an implied contract between W&L and Plaintiff, as Plaintiff alleges exists, and concludes that W&L owed Plaintiff a duty of care based on that contract, Plaintiff's negligence claim must be dismissed as barred by the economic loss rule.

Virginia's economic loss rule bars parties from recovering in tort "simply by recasting a contract claim as a tort claim." *Hazaimeh v. U.S. Bank Nat'l Ass'n*, 94 F. Supp. 3d 741, 747 (E.D. Va. 2015). As the Supreme Court of Virginia has explained:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 399–400 (1976) (quoting Burks Pleading and Practice, § 234 at 406 (4th ed. 1952)). Although in certain circumstances a plaintiff may demonstrate both a breach of contract and a tortious breach of duty, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of [a] contract." *WorldCom, Inc. v. Boyne,* 68 F. App'x 447, 454 (4th Cir. 2003) (quoting *Richmond Metro. Auth.*, 507 S.E.2d at 347) (alterations in original).

Here, Plaintiff attempts to repackage his asserted breach of contract claim as a tort claim. He derives the alleged duty of care owed by W&L from an alleged implied contract, stating that W&L failed to administer its disciplinary system with the care required by this implied contract. Thus, if this alleged duty arises anywhere, it must be under the implied contract, not under common law. Therefore, if the Court identifies an enforceable implied contract between Plaintiff

and W&L, W&L's duty of care should be analyzed as a breach of contract claim, not a tort claim. Accordingly, Plaintiff's negligence claim should be dismissed. *See, e.g.*, *Cook v. John Hancock Life Ins. Co.*, 2015 WL 178108, at *22 (W.D. Va. Jan. 14, 2015) (dismissing claim of negligence where "the only duty allegedly breached is one that exists only by virtue of the existence of a contract between the parties").

## V. CONCLUSION

For the foregoing reasons, W&L respectfully requests that this Court grant its Motion to Dismiss, dismiss Counts III and IV with prejudice, and grant W&L all further relief this Court deems proper.

Dated: July 15, 2019　　　　　　　　　　　Respectfully submitted,

**WASHINGTON & LEE UNIVERSITY**

By: ___/s/_____

R. Craig Wood (VSB # 24264)
MCGUIREWOODS LLP
652 Peter Jefferson Parkway, Ste. 350
P. O. Box 1288
Charlottesville, VA 22902
(Office) (434) 977-2558
(Fax) (434) 980-2274
cwood@mcguirewoods.com

Micah B. Schwartz (VSB # 77299)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
mschwartz@mcguirewoods.com

*Counsel for Defendant*

11

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July 2019, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

David G. Harrison (VSB #17590)
THE HARRISON FIRM, PC
5305 Medmont Circle SW
Roanoke, VA 24018
Tel: (540) 777-7100
Fax: (540) 777-7101
david@harrisonfirm.us

Patricia M. Hamill (Pa. I.D. No. 48416)
CONRAD O'BRIEN PC
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
Tel: (215) 864-9600
Fax: (215) 864-9620
phamill@conradobrien.com

                    /s/
R. Craig Wood (VSB # 24264)
MCGUIREWOODS LLP
652 Peter Jefferson Parkway, Ste. 350
P. O. Box 1288
Charlottesville, VA 22902
(Office) (434) 977-2558
(Fax) (434) 980-2274
cwood@mcguirewoods.com

Micah B. Schwartz (VSB # 77299)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
mschwartz@mcguirewoods.com

*Counsel for Defendant*