# Exhibit 2



CONFIDENTIAL

WLU030000909

EXHIBIT

13



**GOALS**

1.  Overview of the Process
2.  Prohibited Conduct
3.  Deliberation of Case Study



CONFIDENTIAL

WLU030000911



**RESOLUTION PROCESS: TIMING**

Investigation Report provided to HSMB Chair

Within 7 calendar days pre-hearing conference is held

Within 2 calendar days written notice of decision provided

Within 2 calendar days HSMB Chair issues Charge

Within 14 calendar days HSMB Hearing is held.

Appeal must be made within 72 hours of receiving written decision

CONFIDENTIAL



## RESOLUTION PROCESS: TIMING FOR APPEAL

Notice of decision provided to parties

Within 5 calendar days of the receipt of the appeal, decide whether to grant or reject appeal

Appeal must be filed within 72 hours of receipt of notice of decision

If appeal granted, resolve within 10 calendar days.

WLU030000913

WASHINGTON AND LEE UNIVERSITY LAUREN KOZAK AND MEGAN HOBBS,
INVESTIGATORS
DATE OF REPORT: April 28, 2016

This report addresses allegations of violations of the Amended Interim Sexual Misconduct
Policy ("University Policy").  Lauren Kozak and Jason Rodocker conducted the investigation
into these allegations. This report will identify the facts pertinent to whether it is more likely
than not that there has been a violation of the University Policy.

**INVOLVED PARTIES**

Miranda Lambert '19: Complainant
Blake Shelton '17: Respondent

**DATE OF REPORTED INCIDENT:** (date) (time)

**PROCEDURAL HISTORY**

On (date) (time), the roommate of the Complainant, Reba McIntyre, reported to Resident
Advisor, Carrie Underwood that Complainant had been sexually assaulted. The Title IX
Coordinator spoke with Complainant on (date). The Complainant initially asked that an
investigation not proceed; later that day changed she her mind and asked that an investigation
be conducted. Investigators interviewed witnesses on (insert dates).

**ALLEGATIONS**

Complainant alleges that on (date) (time) (location) Respondent violated the policy prohibiting
Nonconsensual Sexual Intercourse by engaging in the following behavior:

- Respondent required Complainant to perform oral sex on him without her consent by
  holding Complainant's head down so that she could not stop performing oral sex.
- Respondent and Complainant engaged in oral sex, after Complainant had been drinking
  excessively and did not have the capacity to consent
- Respondent and Complainant engaged in vaginal intercourse after Complainant had
  been drinking excessively and did not have the capacity to consent
- Respondent knew or should have known of Complainant's incapacitation because he
  had witnessed her consume six 20 ounce beers and four 20oz cups of fireball.
  Complainant was unsteady on her feet, needed assistance walking, was slurring her

CONFIDENTIAL

WLU030000914

**RESPONSE TO ALLEGATIONS**

Respondent acknowledges that Complainant and Respondent engaged in oral and vaginal intercourse. Respondent maintains that both the oral and vaginal intercourse were consensual.

Respondent denies that he placed any pressure on Complainant's head during oral sex. In contrast, according to the Respondent, the Complainant willingly participated by pulling his pants and boxers off and kneeling on the ground.

Respondent denies that Complainant was unable to consent to sexual activity due to incapacitation, and even if she was, he was not aware of that incapacitation. According to Respondent, Complainant lucid enough to have a 30 minute conversation with him while playing beer pong, and took off her and his clothes.

Respondent believes that he had consent for oral intercourse due to Complainant's actions of coming with him to the bedroom, taking his pants and boxers off and then kneeling on the ground to give him oral sex. Respondent believes that he had consent for vaginal intercourse because after oral sex, Complainant then took her clothes off, climbed onto the bed and continued to engage in physical activity with him.

**APPLICABLE POLICIES**

The following definitions in the University Policy (effective August 1, 2015) apply:

*Nonconsensual Sexual Intercourse*

Having sexual intercourse with another individual without effective consent.

*Sexual Intercourse* includes vaginal or anal penetration, however slight, with a body part (e.g., penis, tongue, finger, hand) or object, or oral penetration involving mouth-to-genital contact.

*Consent*

Individuals who choose to engage in sexual activity of any type with each other must first obtain the consent of the other party. Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage freely in sexual activity.

*Additional Guidance about Consent:*

- Consent to one form of sexual activity does not, by itself, constitute consent to engage in

WLU030000915

- Individuals with a previous or current intimate relationship do not automatically give either initial or continued consent to sexual activity. Even in the context of a relationship, there must be mutually understandable communication that clearly indicates a willingness to engage in sexual activity.
- Either party may withdraw consent at any time. Withdrawal of consent should be outwardly demonstrated by words or actions that clearly indicate a desire to end sexual activity. Once withdrawal of consent has been expressed, sexual activity must cease.
- Consent is not effective if it results from the use or threat of physical force, intimidation, or coercion, or any other factor that would eliminate an individual's ability to exercise his or her own free will to choose whether or not to have sexual contact. See "Force" and "Coercion" for further discussion.
- An individual who is physically incapacitated from alcohol or other drug consumption (voluntarily or involuntarily) or is asleep, unconscious, unaware, or otherwise physically helpless is considered unable to give consent.

### Incapacitation

An individual who is incapacitated lacks the ability to make informed, rational judgments and cannot consent to sexual activity. Incapacitation is defined as the inability, temporarily or permanently, to give consent because an individual is mentally and/or physically helpless, asleep, unconscious, or unaware that sexual activity is occurring.

- In other words, a person may be considered unable to give valid consent due to incapacitation if the person is not able to understand the who, what, where, when, why and/or how of a sexual interaction. In evaluating whether effective consent was present in cases of alleged incapacitation, the University asks three questions: (1) Was complainant incapacitated?, (2) If so, did the respondent know that the complainant was incapacitated? and (3) If not, would a sober, reasonable person in the same situation have known that the complainant was incapacitated based on objectively and reasonably apparent indications of impairment.
- An individual who engages in sexual activity with someone the individual knows or reasonably should know is incapable of giving effective consent is in violation of this policy.

### STANDARD OF PROOF

In order to determine that a student has violated the University Policy the standard of proof required is a preponderance of the evidence, i.e., the evidence demonstrates that it is more likely than not that the conduct occurred.

CONFIDENTIAL

WLU030000916

**INFORMATION CONSIDERED**

In creating this investigation report, investigators considered information learned during interviews with the following individuals on the following dates in the following order:

- April 15, 2016
  - Respondent (Appendix A)
  - Complainant (Appendix B
  - Luke Bryan '17 (Appendix C)
  - George Strait '16 (Appendix D)
  - Faith Hill '18 (Appendix E)
  - Sarah Evans '19 (Appendix F)
- April 16, 2016
  - Deanna Carter '19 (Appendix G)
  - Tim McGraw '16 (Appendix H)

Investigators also reviewed documents and other information as part of the investigation. These documents include:

- Text messages between Complainant and Respondent provided by Complainant on April 15, 2016 (Appendix I)
- Email Message dated (date) (time) provided by Complainant on April 15, 2016 (Appendix J)
- Instagram photograph dated (date) (time) provided by Luke Bryan '17 on April 15, 2016
- Photographs of Complainant from (date) (time) provided by Faith Hill '18 on April 15, 2016.

Throughout the course of the investigation, there were other individuals mentioned by witnesses. Investigators did not speak to the following individuals because, based on their evaluation, they were unlikely to provide additional relevant information. These individuals include:

- Keith Urban '18 (mentioned by George Strait as someone who was close to the Respondent; not present for any of the events in question)

- Kenny Chesney '19 (mentioned by Deanna Carter as someone else on the dance floor that night; arrived at the off-campus house and present on the dance floor after the Complainant and Respondent left)

CONFIDENTIAL

**UNDISPUTED FACTS**

It occurred on Saturday night in October.

Complainant is a first-year student; Respondent is a junior.

Complainant and Faith Hill take selfies while walking over to the off-campus house and post them on Instagram.

Respondent texted Complainant to see where they are at. Respondent got her number from Tim McGraw and had never texted her previously.

Both Complainant and Respondent arrived at the off-campus house around 10:00pm on Saturday.

The party is at an off campus apartment. Every time Walk the Moon's song "Shut Up and Dance" plays, the party goers are supposed to drink when they hear the word "dance." There is an Instagram photo of Respondent from Saturday night licking a beer pong table. The photo was posted by another senior and the caption reads "Blake the Snake. Looking for his next drunk girl #dirtyboy."

Complainant and Respondent began playing beer pong at 10:30pm.

By the end of the second beer pong game, at approximately 11:00pm, Complainant had consumed the 20oz beer Respondent had her finish before the beer pong games began and 5 full 20oz beers during the first beer pong game and 4 half full 20 oz cups filled with Fireball during the second beer pong game.

Respondent then gave Complainant a 5th 20oz cup of Fireball. It is unclear how much of it she drank.

Complainant and Respondent began to "make out" by kissing and touching.

The parties went into a bedroom where the sexual penetration occurred.

**ANALYSIS OF DISPUTED FACTS**

To find either or both of the respondents responsible for violation of University Policy, the Hearing Panel must determine whether the Complainant has met her burden of proof to prove

CONFIDENTIAL

WLU030000918

## ANALYSIS OF DISPUTED FACTS

To find either or both of the respondents responsible for violation of University Policy, the Hearing Panel must determine whether the Complainant has met her burden of proof to prove by a preponderance of the evidence that the oral and vaginal intercourse occurred without effective consent.

To have a violation of the policy the facts must show:

1. There was sexual penetration, however slight, between an object or the genitalia or anus of one person, and the mouth, anus or genitalia of another person.
2. Without effective consent.

**First, was there sexual penetration?**

Both parties agree that sexual penetration occurred, both mouth to genitalia penetration and genitalia to genitalia.

**Second, if there was sexual penetration, was there effective consent?**
The Complainant has alleged that she was incapacitated and thus, did not have the ability to consent to sexual intercourse. If the Hearing Panel finds that the Complainant was incapacitated at the time, and that is known or knowable to the Respondent, any sexual activity that takes place is without effective consent.

**Was Complainant incapacitated?**

Complainant reported that she had been drinking since 9:30pm. She reported that she had 2 shots of vodka with Faith Hill around 9:30pm at Faith Hill's house before leaving the room. This was confirmed by Faith Hill who recalled that she was almost out of vodka so she remembered that there were only 4 shots left that night. Complainant has stated that she doesn't remember what occurred after the first beer pong game.

Witnesses reported that Complainant was observed to be unsteady on her feed as Respondent had his arm around her when walking to the room. Witnesses noted that Complainant had very slurred speech to the point that some of her words were undistinguishable and her responses to basic questions did not make sense.

CONFIDENTIAL

WLU030000919

## INVESTIGATION REPORT

- Read through report/appendices. Ask yourself:
  - What is missing here?
  - What questions do I still have?
  - Are all terms, phrases, adjectives used by witnesses and parties defined?

CONFIDENTIAL

WLU030000920



WLU030000921

**Open-Ended**
- Calls for narrative or recall

**Focused**
- Directs the witness to a particular issue
- Ex: "I would like to talk to you about when you were in the bedroom. Can you describe it?"

**Multiple Choice**
- Provides a range of options
- Ex: "Can you tell me whether the clothes were on, off, or some other way?"

**Yes/No**
- Seeks to clarify a specific point
- Ex: "You talked about alcohol. Did you serve alcohol to Nicole?"

**Leading**
- Assumes the answer
- Ex: "You served alcohol to Nicole correct?"
- Use sparingly

CONFIDENTIAL

## INTERVIEW TECHNIQUES

- Ask for definitions of any terms/adjectives: "Hooking up" "making out" "cuddling" "belligerent"
- Avoid compound questions
- Know elements of alleged violations and focus questioning on those issues
- Ask hard questions in a non-accusatory way
  - "Why didn't you report right away?"
  - "What brought you to report at this time? Did you consider reporting it after the incident? Why or why not?"

CONFIDENTIAL

WLU030000923





WLU030000925

## Evaluating Credibility

**Demeanor**
- Did complainant/respondent/witness speak in a convincing manner?
- Was he/she uncertain, confused, self-contradictory or evasive?

**Interest**
- Does complainant/respondent/witness have motive to lie, exaggerate or distort information?

**Detail**
- How well could complainant/respondent/witness remember and describe the things about which he/she spoke about?

**Corroboration**
- Was the statement of the complainant/respondent/witness contradicted or supported by the other statements and evidence?

**Common Sense**
- Does it all add up? (gut check) is there something missing?

Some general questions to ask when evaluating credibility based on several different aspects of credibility

CONFIDENTIAL

WLU030000926



As an investigator, or member of the HSMB or appeal panel you may be asked to evaluate the credibility of the parties and/or witnesses. Just things to consider, not a checklist.

Changes in the behavior of the complainant after the harassment might add to credibility. For example, after being harassed, the complainant was upset, avoided class, meetings or certain areas, his or her grades or performance deteriorated, etc. However, if none of these things occurred it would not meant that the complainant wasn't credible, only that the person who complained perhaps was affected differently, less intensely, or did not express his or her emotions openly.

On the other hand, major inconsistencies in testimony would likely detract from credibility; Minor inconsistencies usually would not detract from credibility.

CONFIDENTIAL

WLU030000927



BUT...

* Reactions may not be what you would expect (for both complainants and respondents)

CONFIDENTIAL

WLU030000928



Fear can "trigger" other responses in the body, including temperature changes, heart rate, perspiration, etc. Neurochemicals are transmitted to the outer part of the brain, the neocortex, that shut down higher level cognition, including thinking and reasoning, etc. The lower and mid-brain act to ensure that our bodies react to survive and prevent thinking from interfering with this focus on self-preservation. The body "reacts" before we have completely cognitively assessed the situation.

the limbic system (emotion center) mediates trauma and arousal whereas the cognitive system is disregarded, interrupted, and can be shut down / frozen. This impacts a person's ability to process verbal information, to attend, focus, retain, and recall information. Arousal engaged; cognition reduced.

Perceptual narrowing = tuning into 1-2 of 5 senses and excluding others
Memories are usually accurate because emot experience heightens memory, but may be incomplete
short-term memory loss suggests that victim should rest 1-2 sleep cycles

Tonic immobility: freeze in response to immediate threat where escape is impossible
Paradoxical behaviors: didn't fight, didn't scream

Trauma victims (not just sexual assault) will make statements that are incomplete and inconsistent partly due to affects of trauma itself.
This can make us question credibility, but should not.
Those who experience assault also do things that we, in the public, question. They have mixed feelings about some of the bx – we can all feel mixed about things we want or don't want.
Perp story may seem more clear, less ambiguous. Possibly because it's true...

CONFIDENTIAL

WLU030000929



## POSSIBLE REACTIONS TO SEXUAL VIOLENCE

- Numbness
- Mood swings, including depression and suicidal thoughts
- Feeling helpless, sad, angry, shocked, confused
- Self-blame or self-deprecation
- Fatigue, low energy, feeling overwhelmed
- Fear that the event with recur
- Startle responses or jumpiness
- Sleep disturbances
- Decline in general functioning
- Recurrent thoughts about the event (preoccupation)
- Difficulty talking about the event
- Denial or sense of unreality about what happened
- Problems with memory/concentration
- Emotional volatility or erratic behavior
- Increase in substance abuse
- Increase in promiscuous behavior
- An "evolving" narrative of events

From Dr. Janet Boller slides on this subject. Complainants may react differently, not all with have these reactions. Also cultural differences can play a role.



## POSSIBLE REACTIONS OF THE RESPONDENT

- ※ Scared

- ※ Angry

- ※ Confused

- ※ Defensive

- ※ Sad

CONFIDENTIAL

WLU030000931



- ▪ Memory can be impacted by assault and each party may tell you/investigators just enough, but not all of the embarrassing details.
    - ▪ If new information is presented will ask: what helped you remember? Why did you share this at this time?

CONFIDENTIAL

WLU030000932

## CREDIBILITY IN ANALYSIS SECTION

* Sometimes you may have a separate section for credibility as a catch-all; but most credibility issues will be addressed as relevant.

* "Complainant stated [insert]. This conflicts with an email he drafted to…."

* "The Respondent said that he took Complainant to the bedroom because he is respectful of women and didn't want her to do anything she would regret later. Respondent said this after a prompting and note from his attorney."

* "It is possible that the fight occurred and someone who was in the room didn't notice. However, witnesses indicated that the room is not large, the back room was not crowded that night, and Complainant reported several shoves against the beer pong table that were strong enough to make it painful to sit and walk days later, repeated curses, and described it as "being brutally thrashed"; it is unlikely that someone would be in the same room and not notice some type of commotion."

* Two witnesses, Ashley and Sarah, reported seeing Respondent provide a flask of alcohol to Complainant and when Complainant refused to drink it, he pressured her to continue drink by telling her she needed to keep up with him. These two witnesses did not know the Respondent or Complainant and had no stake in the outcome of the investigation (or even any knowledge of what we were investigating).

CONFIDENTIAL

WLU030000933

| Prohibited Behavior | Range of Sanctions |
|---|---|
| Non-Consensual Sexual Penetration (if found responsible beyond a reasonable doubt) | Dismissal (Mandatory) |
| Nonconsensual Sexual Penetration (if found responsible by preponderance of the evidence); Non-Consensual Sexual Contact; Non-Physical Sexual Harassment; Sexual Discrimination; Sexual Exploitation; Stalking; Dating Violence; Domestic Violence; Retaliation | Dismissal; Suspension; Probation; Community Service; Educational/Counseling Consultation; Loss of Privileges (denial of the use of certain University facilities or the right to participate in certain activities or to exercise certain privileges for a designated period of time); On Campus Residential Relocation; Changing Academic Schedule |

CONFIDENTIAL

WLU030000934

## SANCTION: FACTORS TO CONSIDER

- The parties' impact statements
- The respondent's prior discipline history;
- How the University has sanctioned similar incidents in the past;
- The nature and violence of the conduct at issue;
- The impact of the conduct on the complainant;
- The impact of the conduct on the community, its members, or its property;
- Whether the respondent has accepted responsibility;
- Whether the respondent is reasonably likely to engage in the conduct in the future;
- The need to prevent similar conduct by this respondent; and
- Any other mitigating or aggravating circumstances, including the University's values.

WLU030000935

## OTHER CONSEQUENCES FOR FINDING OF VIOLATION

### Transcript

- If student is suspended, dismissed, or withdraws while under investigation for sexual violence a notation will be placed on transcript

### Remedies to Complainant

- No contact
- Academic accommodations
- Change in Univ. housing, class schedule, work schedule
- Voluntary leave of absence
- Counseling
- Any other remedy tailored to individual

CONFIDENTIAL

WLU030000936

**BURDEN OF PROOF**

- Presumption is that the Respondent is not responsible. The Complainant must overcome burden of proof before a finding of responsibility will occur.

CONFIDENTIAL

WLU030000937



PREPONDERANCE OF THE EVIDENCE REQUIRED

The standard is met if you believe it is more likely than not that the alleged misconduct occurred

Standard is not "it could have happened"

WLU030000938



HEARING REPORT FORM

CONFIDENTIAL

WLU030000939

**APPEALS**

* Appeal Panel will receive the "record" of the case
  * Petition for Appeal
  * Response to petition from original chair of the HSMB
  * Investigation Report
  * Hearing Report Form

CONFIDENTIAL

WLU030000940

## APPEALS: GROUNDS FOR APPEAL

- No reasonable basis/reasonable basis for sanction;
- New relevant information/no new relevant information (this does not apply in cases of deliberate omission of information by the appellant);
- Procedural defect or error/no procedural defect or error; or
- Extraordinary circumstances/no extraordinary circumstances.

Must determine that the relevant information, procedural defect, or extraordinary circumstances more likely than not impacted the underlying HSMB hearing panel decision.

CONFIDENTIAL

WLU030000941

**APPEALS**

* If appeal granted the appeal panel can decide case solely on the record, or can seek additional information from:
  * Any person who provided first-hand information to the hearing panel
  * Any person who may have new, relevant information
  * Original Chair of the HSMB

CONFIDENTIAL

WLU030000942



## APPEALS

- Appeal Panel has the power to do the following
  - Affirm decision
  - Remand decision to the HSMB hearing panel

CONFIDENTIAL

WLU030000943

## A GOOD HEARING PANEL MEMBER....

Should be:

* Objective
* Fair-minded
* Impartial
* Open-minded
* Professional
* Appropriate in demeanor in and out of the hearing room
* An active listener
* Polite and respectful to all parties

Should not:

* Allow emotion to overrule reason
* Make assumptions as to how a person "should" react (counter-intuitive complainant/respondent behaviors)
* Pre-judge the facts
* Put him/herself in the shoes of the complainant or the respondent
* Allow bias or prejudice to affect his/her judgment

WLU030000944



DANCE LIKE NO ONE IS WATCHING; EMAIL LIKE IT MAY ONE DAY BE READ ALOUD IN A DEPOSITION.

CONFIDENTIAL

WLU030000945

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

CONFIDENTIAL

WLU030000946

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

CONFIDENTIAL

WLU030000947

## HARASSMENT

* To constitute non-sexual harassment there must be a finding that the conduct was:

  * (1) based on one or more of the protected categories (race, color, religion, national or ethnic origin, age, disability, veteran's status, and genetic information),

  * (2) unwelcome; and

  * (3) either severe (in the case of isolated incidents) or repeated and pervasive such that it had the purpose or effect of substantially interfering with an individual's work or academic performance, or of creating an intimidating, hostile or abusive work or educational environment at the University.

    * Harassment may also occur if submission to conduct described in (1) and (2) above is an implicit or explicit term or condition of employment, education, or participation in a campus activity or if submission to or rejection of such conduct is used as the basis for a decision regarding any University operation or program.

CONFIDENTIAL

WLU030000948



WLU030000949



WLU030000950



WLU030000951

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

CONFIDENTIAL

WLU030000952



## DATING AND DOMESTIC VIOLENCE

Violence includes:

- Scratching
- Biting
- Pushing
- Shoving
- Throwing
- Grabbing
- Choking
- Shaking
- Slapping
- Punching
- Burning
- Use of a weapon
- Use of restraints

Threats of violence includes:

- words, gestures, or weapons to communicate the intent to cause injury or physical harm

CONFIDENTIAL

WLU030000953

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

CONFIDENTIAL

WLU030000954

## STALKING

(1)  Course of conduct (two or more actions)

(2)  Directed at a specific person

(3)  That would cause a reasonable person to:

    (1)  Fear for his or her safety or the safety of others; or

    (2)  Suffer substantial emotional distress.

CONFIDENTIAL

WLU030000955



**STALKING**

\* *Substantial emotional distress* means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling

WLU030000956

## EXAMPLES OF POTENTIAL STALKING BEHAVIOR

- Unwelcome/unsolicited communication including in-person communication, telephone calls, voice messages, text messages, e-mail messages, social networking site postings, instant messages, written letters, gifts or other communications;
- Following, pursuing, waiting or showing up uninvited at a workplace, place of residence, classroom, or other locations frequented by a complainant;
- Surveillance and other types of observation, whether by physical proximity or electronic means;
- Trespassing;
- Vandalism;
- Non-consensual touching;
- Direct physical and/or verbal threats against a complainant or someone close to the complainant;
- Gathering of information about a complainant from family, friends, co-workers, and/or classmates;
- Manipulative and controlling behaviors such as threats to harm oneself;
- Defamation or slander against the victim; or
- Using a third party or parties to accomplish any of the above.

WLU030000957

## STALKING: EFFECT OF CONDUCT

# Context is crucial

* The criminal justice system frequently measures crimes by tangibles—broken bones, stab wounds, gun shot injuries, missing teeth, and on. The greater the injuries, the greater the charges and the more important the case. For the stalking victim, the fear that something will happen is overwhelming.

* The impact of stalking is a key component of its legal definition.

* Stalking is often a mix of prohibited and (in a different context) non-prohibited behavior. There may be no overt threats.

Stalking behaviors in and of themselves are not necessarily criminal; and threats can be made explicitly, implicitly or even conveyed without words.

Behaviors which appear meaningless or non-threatening to most can be terrifying to someone under the radar of a stalker. Examples of some of these most common behaviors are sending unwanted flowers or gifts, making unwanted or malicious contact of any kind or showing up unannounced. When these behaviors are persistent and clearly unwanted causing fear, harassment or anxiety then it is stalking. For instance, a rose left on the doorstep seems like a non-threatening gesture, even possibly perceived as romantic under some circumstances, yet to someone being stalked it can indicate the stalker has found them once again. Context is crucial to understanding stalking.

CONFIDENTIAL



CONFIDENTIAL

WLU030000959



When victims asked most common behaviors they experience.

CONFIDENTIAL



## STALKING-QUESTIONS FOR COMPLAINANT

- Has the Complainant:
  - Obtained a new phone number/blocked Respondent's phone?
  - Told friends or family about harassment?
  - Asked to be escorted home from campus/to the parking garage, etc.
  - Changed schedule or route to class or work?
  - Stopped visiting places previously frequented?
  - Taken self-defense course? Bought pepper spray?
  - Changed social media participation
  - Moved residence/stopped spending time in residence?
  - Any other actions taken?
- Has Complainant told Respondent "no" "stop" or "I want no contact with you!"
- Has Respondent found additional ways to contact Complainant if Complainant has blocked one method?
- Any known mental illness or substance abuse problems of Respondent?
- Any threats of violence against others or suicide by Respondent?
- Has Respondent ever destroyed property, especially a former partner's or current Complainant's personal property?
- How did that make you feel? (for each conduct) why?
- If had prior relationship with Respondent, ask Complainant about the relationship.
- Ask about whether any conduct towards others occurred and the effect on the Complainant

Context is critical in stalking cases. Must probe into the context.

CONFIDENTIAL

WLU030000961

**CASE STUDY**

※ Brie Larson moved to Florida to attend school in 2007.  In January 2010, Brie met Chris Pine  through an online social networking site and they began dating in February 2010. Brie ended the relationship in April 2010, but they continued to remain friends and were occasionally sexually intimate. Brie's roommate reported that Chris continued to contact Brie saying he wanted to be with her, and that she thought Chris was obsessed with Brie.

CONFIDENTIAL

WLU030000962

## CASE STUDY

- In April 2010, Chris met another woman through a different online social networking site and they began dating. In her statement to police she stated that they were both seeing other people but he never mentioned Brie by name. She later learned that Chris was seeing multiple women, many directly after being with her.

- In August 2010 (after Brie had graduated and was working), Chris began following Brie to her apartment complex, and began sending her photographs and videos of him having sex with other women. He sent her texts, telling her he could not live without her and that he had nothing else to live for. Brie told him that she wanted no further contact with him and blocked his number, but the sexually explicit messages continued.

CONFIDENTIAL

WLU030000963

## CASE STUDY

* Brie called police in August 2010 (eight days before homicide) because Chris was watching her from his car in the parking lot of her apartment. She told officers that his presence was "weird" but said she was not afraid, just that she thought he was acting "creepy." Brie advised police about text messages and images she received from Chris, but did not want to pursue charges. She asked the officers to tell him to leave and not to contact him again. The officers escorted him off the proper and told him if he returned or continued to text or call her he would be charged with a crime.

* Brie later went to the police to file a report of stalking. Brie reported to police that she had started receiving text messages from strangers responding to an advertisement on Craigslist under "intercourse." The ad included her cell phone number and it said she was "all about fun and games." Brie believed Chris was responsible for placing the ads. The officers told Chris that he was being charged with a crime. He got upset and denied everything.

CONFIDENTIAL

WLU030000964

## CASE STUDY

- Complainant thought looking at her from car was just "creepy" and originally told police she wasn't afraid. If the person isn't concerned, doesn't end inquiry. Would a reasonable person be?
- Use of anonymous tools (Craiglist)—common and easy to use now
  - Yik Yak
  - Snapchat
  - Textme
  - Email rerouting software
- Other potential conduct issues (i.e., sexual harassment)

CONFIDENTIAL

WLU030000965

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

CONFIDENTIAL

WLU030000966

## SEXUAL EXPLOITATION

- Clint and Alyssa were dating for several weeks. While they were dating, Alyssa took a photo of herself naked and texted it to Clint. Clint and Alyssa then broke up. Clint then emailed the naked picture of Alyssa to his friend, Noelle. Noelle then forwarded the picture to several other individuals. Alyssa brings a complaint against Clint and Noelle.

CONFIDENTIAL

WLU030000967

## SEXUAL EXPLOITATION

※ Joshua and Ryan have been dating. On a Saturday night, Joshua asks Ryan to come to his room. Ryan doesn't know that Joshua has concealed two friends in his closet and they watch through a crack as the couple have consensual sex. Joshua also set up a camera and filmed the sex. Ryan has brought a complaint against all three students.

CONFIDENTIAL

WLU030000968

## SEXUAL EXPLOITATION

- What if two W&L students were having sexual intercourse on the colonnade lawn and a student took a video of the intercourse and sent it around through their fraternity GroupMe?

CONFIDENTIAL

Prohibited Discrimination/Sex Discrimination

Prohibited Harassment/Sex Harassment

Dating and Domestic Violence

Stalking

Sexual Exploitation

Nonconsensual Sexual Penetration

Nonconsensual Sexual Contact

WLU030000970

## SEXUAL ASSAULT: ELEMENTS TO CONSIDER

1. Did penetration or sexual contact occur?
2. Was complainant capable of giving consent?
   1. Was there force?
   2. Was there coercion?
   3. Was complainant incapacitated?
   4. Was complainant over 18?
3. Did complainant's words or actions clearly indicate a willingness to engage in the particular sexual activity?

CONFIDENTIAL

WLU030000971

## COERCION

- Coercion is the use of unreasonable and persistent pressure to compel another individual to initiate or continue sexual activity against an individual's will.

- A person's words or conduct are sufficient to constitute coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity.

- In evaluating coercion, consider: (1) frequency of the application of pressure; (2) intensity of the pressure; (3) isolation of the person being pressured; and (4) duration of the pressure.

CONFIDENTIAL

WLU030000972



WLU030000973

## INCAPACITATION: WAS COMPLAINANT INCAPACITATED?

* Weight/height?
* Quantity and quality of alcohol?
* Timing of drinks?
* Food consumption?
* Blacked out in past? How often?
* How much regularly drink?

CONFIDENTIAL

WLU030000974

# Incapacitation: Was Complainant Incapacitated?

| Questions to address intoxication vs incapacitation in cases of alcohol or drug use: | Could complainant walk? Steady or unsteady? Did complainant need assistance walking? |
| --- | --- |
| | Could complainant speak clearly? Slurred words? |
| | Did complainant vomit? Did complainant have incontinence? |
| | What physical tasks did the complainant perform, and how well did he/she perform them? (e.g., use a smartphone, climb stairs, remove clothes) |
| | Did the complainant black out? |
| | Did complainant show strange behavior like combativeness/emotional volubility? Did the complainant seem to understand where he/she was and where he/she might be going? |

CONFIDENTIAL

## INCAPACITATION: DID RESPONDENT KNOW OR SHOULD RESPONDENT HAVE KNOWN?

Standard is a "reasonable, sober person"

* How much alcohol or drugs did Respondent see Complainant consume? Over what period of time?
* What behavioral warning signs that the complainant may be incapacitated or approaching incapacitation did Respondent witness?
* What was the complainant's condition when last seen by reliable third-party witnesses?

Always ask whether pictures/video of Complainant at party are available. Assess pre-incident behavior, quantity/quality of alcohol use.

CONFIDENTIAL

WLU030000976



**LACK OF PHYSICAL EVIDENCE**

- Review of 36 pregnant adolescents presenting for sexual abuse evaluations:
  - 5% definitive findings of penetration;
  - 6% normal or non-specific findings;
  - 22% inconclusive findings.

Kellogg et al Pediatrics 2004, 114 e67.

CONFIDENTIAL



PRACTICE: WHAT QUESTIONS WOULD YOU ASK?

WLU030000978



## PRACTICE: DELIBERATE ON SAMPLE CASE

- Deliberate on the sample case
- Discuss potential language for hearing report form

CONFIDENTIAL

WLU030000979